Carlos LANDRIAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–05–00697–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 9, 2007.

Discretionary Review Granted
Jan. 16, 2008.

Sam Adamo, Houston, for Appellant.

Charles A. Rosenthal, Jr., Dist. Attorney–Harris County, Carol M. Cameron, Asst. Dist. Atty., Houston, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and ALCALA.

## OPINION

TIM TAFT, Justice.

A jury convicted appellant, Carlos Landrian, of aggravated assault and assessed punishment at seven years' in prison with a recommendation for community supervision. See Tex. Pen.Code Ann. § 22.02(a) (Vernon Supp.2006). The trial court suspended appellant's sentence and assessed punishment at seven years' community supervision. We determine (1) whether the evidence was legally sufficient to support the jury's guilty verdict, and (2) whether the trial court's submission of two aggravated assault application paragraphs to the jury in the disjunctive was harmful error because it allowed the jury to convict appellant with less than a unanimous verdict. We reverse the judgment and remand the cause for a new trial.

### Facts

On December 19, 2003, appellant was attending a company Christmas party at the Camino Real Apartments' clubhouse. Luis Brizuela, complainant, went to the party to pick up his cousin and to visit with people at the party. Complainant went outside to the back of the clubhouse to answer his cell phone.

After complainant had answered his phone, he walked to the front of the clubhouse, where he saw Luis Miguel lying on the ground, bleeding. Miguel and appellant had been fighting. Appellant then threw a bottle, injuring complainant. A piece of glass from the bottle lodged in complainant's eye. An ambulance arrived about 10 minutes later and took complainant to the hospital. Complainant suffered a severe laceration of the cornea and sclera and significant trauma of the retina and other interior parts of the eye. Complainant's eye had to be removed.

The day after the incident, complainant contacted the police. Officer Bang Le of the Houston Police Department met with complainant at his home to complete an offense report. Complainant told Officer Le that appellant had attempted to hit Miguel with the bottle, but had hit him instead. Appellant was eventually arrested for aggravated assault.

At trial, the State presented witnesses who testified that appellant threw a bottle and injured complainant. However, the witnesses' testimony differed about how appellant threw the bottle. Complainant

testified that appellant had exited the front door and had intentionally thrown an unbroken beer bottle directly at him, striking him in the head and causing the glass to become lodged in his eye. Two Houston Police officers testified that complainant's original complaint said appellant had hit complainant with the bottle, but that appellant had attempted to throw the bottle at Miguel. State's witness Hernan Martinez testified that appellant had exited the clubhouse with a beer bottle, which he broke on the ground, and then had thrown a shard of glass at complainant. After Martinez made this statement, the State showed Martinez his original statement, in which he had said that appellant had thrown the bottle at Miguel, but had hit complainant. Finally, State's witness Piedad Salazar testified that appellant had smashed a bottle against a wall and had thrown the bottle into the air, not aiming at anyone. Salazar stated that a piece of the broken bottle had hit complainant.

Appellant and his witnesses testified that he had gone outside the party to help clean up and that a group of men, including complainant and Miguel, were outside the clubhouse, drinking. They testified that Miguel attacked appellant as appellant had exited the building. Appellant hit Miguel in the head with a beer bottle in an attempt to ward off a second attack by Miguel. The bottle exploded on Miguel's head, and some glass hit complainant. Appellant testified that he never realized that complainant had been injured by the broken glass.

## Legal Sufficiency

■ In his sixth issue, appellant argues, in part, that the evidence is legally insuffi-

cient to support the conviction because (1) the State "did not provide any evidence that appellant was *not* acting in self-defense"; (2) the State introduced "no evidence" of transferred intent; and (3) the State offered "no evidence" that the bottle could have caused death or serious bodily injury.[1]

### A. Standard of Review and the Law

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex.Crim.App.2005). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses because this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *see also Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Instead, our duty is to determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App.2000); *Adelman*, 828 S.W.2d at 422. In so doing, we resolve any inconsistencies in the evidence in favor of the verdict. *See Matson*, 819 S.W.2d at 843.

A person commits aggravated assault if he either intentionally, knowingly, or reck-

---

1. We address this part of appellant's sixth issue first because it could afford appellant the greatest relief. If "the evidence is legally insufficient to establish the elements of the offense, appellant is acquitted and may not be retried for the offense." *Cleveland v. State*, 177 S.W.3d 374, 387 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd) (citing *Clewis v. State*, 922 S.W.2d at 126, 131(Tex.Crim.App.1996)).

lessly causes serious bodily injury to another or he intentionally, knowingly, or recklessly causes bodily injury to another with the use of a deadly weapon. TEX. PEN.CODE ANN. § 22.02(a)(1)-(2).

## B. Discussion

### 1. Self–Defense

 Appellant first contends that "the jury could not have found beyond a reasonable doubt that [appellant] was not acting in self-defense, which is a required element of the State's case." Specifically, appellant argues that the State failed to prove beyond a reasonable doubt that appellant was not acting in self-defense. However, the State has only the burden of persuasion when attempting to dispose of appellant's self-defense claim. *See Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim.App.1991) (explaining that State is not required to produce affirmative evidence refuting self-defense). The burden of persuasion requires only that the State prove beyond a reasonable doubt that appellant actually committed the offense of aggravated assault. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex.Crim.App.2003). Because the trial court submitted the law of self-defense only as a defense to the paragraph alleging intentional or knowing conduct, we construe appellant's argument to be that the State failed to meet its burden because the State presented legally insufficient evidence that appellant intentionally or knowingly caused bodily harm with a deadly weapon, specifically, a bottle.

The trial court's instruction on self-defense provided a defense if appellant hit complainant with the bottle while defending himself against Luis Miguel. The State's witnesses testified that appellant threw a bottle at Miguel, but hit complainant. State's witness Martinez's testimony also showed that appellant had already beaten up Miguel and that Miguel was too drunk to fight back when appellant threw the bottle that hit complainant.

The jury was entitled to believe any testimony presented. The jury could have believed that the State's witnesses who testified that appellant was not acting in self-defense were more credible than appellant's own testimony and the testimony of his witnesses that he was acting in self-defense.

### 2. Transferred Intent

 Appellant next asserts that the State presented no evidence proving that appellant threw the bottle directly at complainant. Although the State did present evidence that appellant threw the bottle directly at complainant, the theory of transferred intent was raised by the evidence that appellant had thrown the bottle at Miguel, but had hit complainant instead. Transferred intent "is raised when there is evidence a defendant with the required culpable mental state intends to injure or harm a specific person but injures or harms a different person...." *Manrique v. State*, 994 S.W.2d 640, 647 (Tex.Crim. App.1999); *see* TEX. PEN.CODE ANN. § 6.04(b)(2) (Vernon 2003) ("A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what was desired, contemplated, or risked is that a different person or property was injured, harmed, or otherwise affected.").

The State did put on evidence that appellant attempted to hit Miguel with the bottle. Hernan Martinez first stated that appellant had thrown the bottle directly at complainant, then later stated that appellant had thrown the bottle at Miguel, but had struck complainant instead. Appellant testified himself that he hit Miguel with the bottle during a fight. The jury could have believed either that appellant had intentionally hit Miguel or that he had

thrown a bottle at him and that glass had hit complainant in the eye. There was more than a scintilla of evidence to support either theory. That is, there was legally sufficient evidence to prove appellant's guilt for either a direct assault upon complainant or for an assault upon complainant through the doctrine of transferred intent.

### 3. Deadly Weapon

■ Appellant finally contends that the State failed to show "any evidence" that the bottle was a deadly weapon.

A deadly weapon is anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PEN.CODE ANN. § 1.07(a)(17)(B) (Vernon Supp.2006). The State presented evidence that appellant intentionally threw the bottle directly at complainant. Officer Le testified that a bottle thrown or slashed at another could cause death or serious bodily injury. The evidence further showed that complainant lost his right eye. Complainant's permanent loss of his right eye constituted serious bodily injury. *See Garza v. State,* 695 S.W.2d 726, 729 (Tex. App.-Dallas 1985) (stating that loss of eye constitutes serious bodily injury), *aff'd on other grounds,* 725 S.W.2d 256 (Tex.Crim. App.1987); TEX. PEN.CODE ANN. § 1.07(a)(46) (Vernon Supp.2006) (" 'Serious bodily injury' means ... protracted loss or impairment of the function of any bodily member or organ."). It is in the jury's province to determine the credibility of the evidence. The jury could have believed the witnesses' testimony that appellant used the bottle to cause serious bodily injury to complainant.

### C. Resolution

We hold the evidence is legally sufficient to support the conviction, and we thus reject appellant's challenges in regard to self-defense, transferred intent, and use of a deadly weapon. We overrule the legal-sufficiency portion of appellant's sixth issue.

### Unanimous Verdict

In his first issue, appellant argues that he was denied the right to a unanimous jury verdict because the charge allowed the jury to convict him of aggravated assault without unanimously determining whether appellant (1) intentionally or knowingly caused bodily injury with a deadly weapon or (2) recklessly caused serious bodily injury.

### A. Standard of Review and Law

Texas requires unanimous verdicts in all felony cases. *See* TEX. CONST. art. V, § 13; *Stuhler v. State,* 218 S.W.3d 706, 716 (Tex.Crim.App.2007); *Ngo v. State,* 175 S.W.3d 738, 745 (Tex.Crim.App.2005). Appellate review of jury-charge error involves a two-step process. *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim.App. 1994). Initially, we must determine whether error occurred. If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731–32. Error in the charge, if timely objected to in the trial court, requires reversal if the error was "calculated to injure [the] rights of the defendant," which means no more than that there must be some harm to the accused from the error. TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006); *see Abdnor,* 871 S.W.2d at 731–32; *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g). "A defendant must have suffered 'some' actual, rather than theoretical harm from the error." *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986) (citing *Almanza,* 686 S.W.2d at 171).

A person commits the offense of aggravated assault if the person commits assault

as defined in section 22.01 of the Texas Penal Code[2] and the person (1) causes serious bodily injury to another, including the person's spouse, or (2) uses or exhibits a deadly weapon during the commission of the assault. *See* TEX. PEN.CODE ANN. § 22.02(a)(1)-(2).

## B. Error

■ Appellant contends that his right to an unanimous jury verdict was violated because the jury was permitted to return a general verdict of guilty "without unanimously finding the State proved all elements of the two offenses they [sic] charged him with."

The application paragraph of the charge instructed the jury as follows,

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 19th day of December, 2003, in Harris County, Texas, the defendant, Carlos Landrian did then and there unlawfully, intentionally or knowingly cause bodily injury to Luis Brizuela by using a deadly weapon, namely, a bottle as alleged in Paragraph 1 of the indictment; or

> If you find from the evidence beyond a reasonable doubt that on or about the 19th day of December, 2003, in Harris County, Texas the defendant, Carlos Landrian, did then and there unlawfully, recklessly cause serious bodily injury to Luis Brizuela by throwing a bottle in the direction of Luis Brizuela as alleged in Paragraph 2 of the indictment, then you will find the defendant guilty as charged in the indictment.

The State argues that *Kitchens v. State* and *Martinez v. State* are controlling. *See Kitchens v. State*, 823 S.W.2d 256 (Tex. Crim.App.1991); *Martinez v. State*, 129 S.W.3d 101 (Tex.Crim.App.2004). In both *Kitchens* and *Martinez*, the defendants were disjunctively charged with one offense of capital murder. *Kitchens*, 823 S.W.2d at 258; *Martinez*, 129 S.W.3d at 103. The charge's disjunctive nature was not error because the disjoined paragraphs merely contained different means of committing this one offense and were in the same subsection of the statute. *See* TEX. PEN.CODE. ANN. § 19.03(a)(2) (Vernon Supp.2006) ("A person commits an offense if he commits murder as defined under Section 19.02(b)(1) and the person commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, or obstruction or retaliation."); *see also Kitchens*, 823 S.W.2d at 258 (charging murder in course of committing robbery or aggravated sexual assault); *Martinez*, 129 S.W.3d at 103 (charging murder in course of committing robbery or aggravated sexual assault). In the present case, appellant was disjunctively charged with aggravating factors that appear in different subsections of the aggravated-assault statute. *See Vick v. State*, 991 S.W.2d 830, 833 (Tex.Crim.App.1999) (finding four different aggravated sexual assault offenses in Section 22.02 because "or" is used to "distinguish and separate different conduct"); *Gonzales v. State*, 191 S.W.3d 741, 747–48 (Tex.App.-Waco, 2006, pet.ref'd) (finding three separate aggravated-assault offenses for same reasons). *Kitchens* and *Martinez* thus do not control.

---

2. A person commits assault if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. *See* TEX. PEN.CODE. ANN. § 22.01(a) (Vernon Supp.2006).

The State also relies on *Ngo* and *Francis*, arguing that this is not a case in which there were different acts committed at different times. *See Ngo v. State*, 175 S.W.3d 738 (Tex.Crim.App.2005); *Francis v. State*, 36 S.W.3d 121 (Tex.Crim.App.2000); *see also Stuhler*, 218 S.W.3d at 716–17. The State contends that a single criminal act was committed in this case. The State misses the significance of *Stuhler*, which is controlling under the facts here. The Court of Criminal Appeals held in *Stuhler* that the defendant was denied her right to an unanimous jury verdict when the application paragraph of the jury charge authorized the jury to convict her upon a finding *either* that she had caused serious bodily injury or serious mental deficiency to a child, *i.e.*, the charge did not required a unanimous verdict on the type of injury caused. *See Stuhler*, 218 S.W.3d at 717–18; TEX. PEN.CODE ANN. § 22.04(a)(1)-(2) (Vernon Supp.2006) (stating in subsection (1) that an offense is committed by causing serious bodily injury and stating in subsection (2) that another offense is committed by causing serious mental deficiency, impairment, or injury).

The *Stuhler* court looked to the Legislature's intent to determine whether the jury charge should have required an unanimous verdict on whether the defendant caused serious mental deficiency, impairment, or injury. *Stuhler*, 218 S.W.3d at 718 (citing *Jefferson v. State*, 189 S.W.3d 305, 312 (Tex.Crim.App.2006)) (noting that, like United States Supreme Court, we decide what level of specificity is required in jury verdict to satisfy requirement of jury una-

nimity as function, at least in first instance, of statutory construction, citing *Richardson v. United States*, 526 U.S. 813, 817–18, 119 S.Ct. 1707, 1710, 143 L.Ed.2d 985 (1999)). In sum, the court concluded that "the Legislature intended the separate results spelled out in the various subsections of the statute to be elemental and thus required jury unanimity." *Id.* 218 S.W.3d at 719.

The *Stuhler* court explained its rationale as follows:

> [W]e must return to eighth-grade grammar to determine what elements the jury must unanimously find beyond a reasonable doubt. At a minimum, these are: the subject (the defendant); the main verb; and the direct object if the main verb requires a direct object (i.e., the offense is a result oriented crime).... Generally, adverbial phrases, introduced by the preposition "by," describe the manner and means of committing the offense. They are not the gravamen of the offense, nor elements on which the jury must be unanimous.

*Stuhler*, 218 S.W.3d at 718 (quoting *Jefferson v. State*, 189 S.W.3d 305, 315–16 (Cochran, J., concurring)).[3]

The Waco Court of Appeals has held recently that there are at least three separate and distinct offenses of aggravated assault:

- Intentionally, knowingly, or recklessly causing serious bodily injury to another. *See* TEX. PEN.CODE ANN. §§ 22.01(a)(1), 22.02(a)(1).

---

**3.** Calling it a "general rule of thumb," *Stuhler* applied the eighth-grade-grammar approach. That approach, however, fails to account for the culpable metal state, which is what, in many instances, separates same or similar facts into different offenses. We note that in appellant's supplemental brief, which we requested by order dated July 3, 2007 in order to have briefing on the impact of *Stuhler*, appellant asserts an element-test approach based on the Texas Penal Code's requirements of (1) the forbidden conduct; (2) the required culpability; and (3) any required result. *See* TEX. PEN.CODE ANN. § 1.07(22) (Vernon Supp. 2006).

- Intentionally, knowingly, or recklessly causing bodily injury to another and using or exhibiting a deadly weapon during the commission of the assault. *See id.* §§ 22.01(a)(1), 22.02(a)(2).
- Intentionally or knowingly threatening another with imminent bodily injury and using or exhibiting a deadly weapon during the commission of the assault. *See id.* §§ 22.01(a)(2), 22.02(a)(2).

*Gonzales v. State,* 191 S.W.3d at 747–48. We agree. The first aggravated-assault offense set out in *Gonzales* involves a defendant (subject) who causes (verb) serious bodily injury (direct object). *See* Tex. Pen. Code Ann. §§ 22.01(a)(1), 22.02(a)(1). The second aggravated-assault offense involves a defendant (subject) who causes (verb) bodily injury (direct object). *See id.* §§ 22.01(a)(1), 22.02(a)(2). The third aggravated-assault offense involves a defendant (subject) who threatens (verb) bodily injury (direct object). *See id.* §§ 22.01(a)(2), 22.02(a)(2). Under the *Stuhler* analysis, the first and second offenses have different direct objects (serious bodily injury and bodily injury). Also, the second and third offenses have different verbs (causes and threatens). Finally, the first and third offenses have different direct objects (serious bodily injury and bodily injury). Under *Stuhler,* such differences constitute different offenses. *See Stuhler,* 218 S.W.3d at 718. Therefore, the *Gonzales* court's holding that section 22.02 (proscribing aggravated assault) contains at least three separate offenses is confirmed by *Stuhler.*

Here, the jury charge presented two types of aggravated assault without requiring the jury to determine unanimously whether appellant caused serious bodily injury as alleged in paragraph one or

whether appellant caused bodily injury as alleged in paragraph two. *See* Tex. Pen. Code Ann. § 22.02(a)(1)-(2). The subject (appellant) and the main verb (cause) were the same in both offenses. However, the direct objects of both offenses were different ("serious bodily injury" and "bodily injury"). *See id.* § 22.02(a)(1)-(2).

The State asserts that the respective aggravating factors (serious bodily injury and use of a deadly weapon) were merely different modes of committing the same offense of aggravated assault, which is the offense of simple assault aggravated by one of two aggravating factors. The State's analysis fails to take account of the three different ways that assault can be committed. In particular, the conduct engaged in (*i.e.,* the verb) can be either "causing" or "threatening." Although the verb used in the application paragraphs here was the same, once the aggravating factor of serious bodily injury replaced bodily injury in one of the allegations of aggravated assault, a difference was created in the direct object (bodily injury versus serious bodily injury).[4]

We hold, in accord with *Stuhler,* that the trial court erred in submitting a jury charge without requiring the jury unanimously to agree that appellant either intentionally and knowingly caused bodily injury or recklessly caused serious bodily injury.

## C. Harm

In examining the record to determine whether jury-charge error is harmful, the reviewing court should consider the entirety of the jury charge itself; the evidence, including the contested issues and weight of the probative evidence; the arguments of counsel; and any other relevant infor-

---

**4.** If an element test were used, a second difference in the allegations would be the culpa- ble mental state (recklessly versus intentionally and knowingly).

mation revealed by the record of the trial as a whole. *Ngo,* 175 S.W.3d at 750 n. 48; *Bailey v. State,* 867 S.W.2d 42, 43 (Tex. Crim.App.1993); *Almanza,* 686 S.W.2d at 171. Because appellant objected to the trial court's charge for not requiring an unanimous verdict as to each paragraph alleged, we determine whether there was any actual harm. *See Almanza,* 686 S.W.2d at 171.

### 1. The Charge Itself

The charge's instructions on self-defense and transferred intent were applied only to the first paragraph of the indictment. The charge allowed the jury to find appellant guilty if it found that he intended to hit Miguel with the bottle, but hit complainant instead. Further, the charge allowed the jury to find appellant not guilty if it found that appellant intentionally attempted to hit Miguel in self-defense, but hit complainant instead. Of course, the main application paragraph allowed the jury to find appellant guilty if he committed either the offense as alleged in the first paragraph of the indictment or as alleged in the second paragraph of the indictment.

Therefore, the charge offered three different theories that applied to the offense alleged: two theories applied to the offense in the first paragraph (intentionally or knowingly causing bodily injury), and only one theory applied the offense alleged in the second paragraph (recklessly causing serious bodily injury).

### 2. The Evidence

The State presented several witnesses who testified that appellant intentionally or knowingly threw the bottle at either complainant or Miguel. Complainant testified that appellant threw an unbroken beer bottle at him. Martinez testified that appellant broke a beer bottle on the floor and threw it at complainant. In addition, Martinez testified that appellant threw the bottle at Miguel, but missed and hit complainant. Two Houston Police Department officers testified that complainant had originally said that appellant had hit him (complainant) with the bottle, but that appellant had attempted to throw the bottle at Miguel. Appellant and his witnesses testified that he had hit Miguel with the bottle in self-defense. Appellant's version of the events adds to the State's theory of intentional conduct when coupled with the theory of transferred intent because appellant's intent to hit Miguel transfers to intent to hit complainant. *See* Tex. Pen. Code Ann. § 6.04(b)(1).

In contrast, the State presented only one witness, Salazar, to prove that appellant "recklessly" caused complainant's injury. She testified that appellant had broken the beer bottle on a wall, then threw the bottle in the air, not aiming at anyone.

### 3. Arguments

The jury was instructed by the prosecutor during closing arguments that the jury need not reach a unanimous verdict. The prosecutor told the jury:

> And the law says that you don't have to agree on which one it was. In other words, let's say eight of you say, "Okay. Yeah, he meant to hit this guy, slipped out of his hand hit the other guy." [objection omitted].... And let's say four of you say, "I don't think he was trying to hit the guy on the ground. I think he was just angry, wanting to show he was tough and threw the bottle recklessly and happened to hit this guy and we think he's guilty under the second paragraph." You don't have to sit back there and fight over which one it is as long as 12 of you agree that he's guilty of aggravated assault by either Paragraph 1 or Paragraph 2.

### 4. Other Relevant Information

The trial court also had instructed the jury that a unanimous verdict was not necessary. During voir dire, the trial court told the jurors:

Now, because there are two alternative pleading paragraphs that gives the jury options, meaning basically, if you go back in the jury room in the Court's Charge, you have the option of finding the person guilty on either one. *In fact, it doesn't have to be unanimous.* You might ... have six people decide threat [sic] with a deadly weapon. That's what they believe beyond a reasonable doubt. You might have six people believe its recklessly causing serious bodily injury. *So you don't have to agree.*

(Emphasis added.)

In one of 11 notes sent to the trial court, the jury asked: "In determining guilt or innocence, do we need to make a determination beyond a reasonable doubt as to whether or not we agree with the prosecution's witnesses testimony as to *in what manner* the bottle was thrown?" (Emphasis added.) The court responded, "Read the charge and continue to deliberate."

The jury told the trial court that it was hopelessly deadlocked, and the court responded by issuing an *Allen*[5] charge. After approximately eight hours of deliberating, the jury convicted appellant of aggravated assault.

### 5. Resolution

■ Similar to that in *Stuhler,* the evidence here weighed heavily on one side in a case in which the State relied on different evidence to prove two different theories. The trial court failed to require the jury to decide unanimously whether appellant (1) acted intentionally or knowingly or (2) acted recklessly. *See Stuhler,* 218

S.W.3d at 719 (finding egregious harm when twice as much evidence for one offense exists than the other). Although the *Stuhler* court held the evidence for one theory to be insufficient, the insufficiency of the evidence was not the controlling factor in the court's discussion of harm. The *Stuhler* court discussed the difference in the amount of evidence proving one theory *vis-a-vis* the amount of evidence proving the other. *Id.* (stating testimony regarding serious bodily injury ran more than twice as long in record than testimony regarding serious mental injury); *see also Stuhler v. State,* NO. 2-04-208-CR, 2005 WL 2402686, at *3 (Tex.App.-Fort Worth Sept.29, 2005), *aff'd* 218 S.W.3d 706 (Tex.Crim.App.2007) (holding that harm was not created by insufficiency of evidence for one offense, but, rather, insufficiency only "exacerbated" harm.).

In addition, the jury charge weighed more heavily toward the first paragraph of the application paragraph on aggravated assault because transferred intent and self-defense are theories that assume that appellant was acting intentionally or knowingly. Thus, including the application paragraphs, there were three portions of the jury charge dedicated to appellant's intentionally and knowing causing injury, while only one portion contained the reckless theory. Far greater emphasis in the jury charge, analogously to far greater emphasis on one theory in the evidence, weighs toward finding some harm here.

The error in the jury charge was further compounded by both the trial court's in voir dire and the prosecutor's in argument instructing the jury that it did not have to unanimously find appellant guilty under either one paragraph of the other. *See Ngo,* 175 S.W.3d at 750–51 (stating that it is harmful error for State to instruct veni-

---

5. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). An *Allen* charge, or dynamite charge, is designed to encourage the jury to arrive at a verdict without doing damage to the consciences of the jurors.

re panel that it is not required to return unanimous verdict when separate offenses are alleged).

Finally, that the jury did appear to be led astray by the error is demonstrated by the jury note asking whether the jury had to find unanimously in what manner the bottle was thrown. Once again, this fact weighs toward a finding of some harm. If the similarly unbalanced state of the evidence in *Stuhler* led that court to find *egregious* harm, then *a fortiori* this Court must find at least *some actual* harm here, when not only is the state of the evidence extremely unbalanced, but the jury instructions are similarly unbalanced, the trial court and prosecutor emphasized the error, and the jurors sent out a note demonstrating confusion about whether they had to agree on the manner in which the bottle was thrown. In other words, an analysis of all the *Almanza* harm factors, the charge, the weight of the evidence, the arguments of counsel, and other relevant information in the record, show that all factors weigh toward finding some actual harm.

Accordingly, we sustain appellant's first issue.

### Conclusion

We reverse the judgment and remand the cause.[6]

---

6. Having sustained appellant's first issue, it is unnecessary to address issues two (challenging the denial of the request to re-open the evidence), three (challenging the denial of the motion for new trial), four (challenging other errors in the charge), five (challenging the *Allen* dynamite charge), and that portion of six challenging factual sufficiency of the evidence because relief on any of those issues would be the same as we are giving by sustaining appellant's first issue.