Carlos LANDRIAN, Appellant,

v.

The STATE of Texas.

No. PD–1561–07.

Court of Criminal Appeals of Texas.

Oct. 8, 2008.

Sam Adamo, Houston, for Appellant.

Carol M. Cameron, Assistant District Attorney, Houston, Jeffrey L. Van Horn, State's Attorney, Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J., JOHNSON, HERVEY and HOLCOMB, JJ., joined.

We address the jury unanimity requirement in the context of an aggravated-assault prosecution.[1] The evidence at trial showed that Luis Brizuela went to a company Christmas party hosted by appellant's boss. As the party ended, appellant

---

1. We granted the State's sole ground for review:

   The court of appeals erred in holding the trial court erred in submitting a jury charge without requiring the jury unanimously to agree that appellant either intentionally and knowingly caused bodily injury or recklessly caused serious bodily injury.

and a drunk "party-crasher" got into a fight outside. Glass from a broken bottle that appellant threw at or in Mr. Brizuela's direction hit him and caused Mr. Brizuela to lose his left eye. Appellant was charged with the aggravated assault of Luis Brizuela by either (1) intentionally or knowingly causing bodily injury by using a deadly weapon, a bottle, or (2) recklessly causing serious bodily injury by throwing a bottle in his direction. The jury was charged in the disjunctive, and it returned a general verdict. The First Court of Appeals held that the trial judge erred because he did not require the jury to reach a unanimous verdict on whether appellant intentionally or knowingly caused bodily injury by using the bottle as a deadly weapon or whether he recklessly caused serious bodily injury by throwing the bottle in Mr. Brizuela's direction.[2]

■ We conclude that the trial judge did not err. The jury charge required the jury to unanimously find that appellant caused bodily injury to Luis Brizuela. The gravamen of this result-oriented offense is "causing bodily injury." The jury did not have to be unanimous on the aggravating factors of whether it was a "serious" bodily injury or whether appellant used a deadly weapon.

## I.

The evidence at trial was hotly contested. Luis Brizuela testified that he went to a company Christmas party at the Camino Real Apartments clubhouse on December 19, 2003, to pick up his cousin who worked for the company. Mr. Brizuela went inside and visited with friends, including appellant, for a while. Everyone was drinking,[3] and Mr. Brizuela had two beers. He got a call on his cell phone, so he went outside and walked around to the back of the clubhouse to answer it. After he finished his call, he returned to the front of the clubhouse where he saw a person lying on the ground. It was Luis Miguel, whom he had met earlier at the party. Luis Miguel was drunk and "asleep." He had blood all over him. When Mr. Brizuela was five feet from the front door, he saw appellant come outside. Appellant threw a bottle at him. It hit him in the left eye. His eye began to bleed and it hurt a great deal. Soon paramedics arrived and took him to the hospital. He had emergency surgery, but about a week later, he had to have another operation to remove his left eye. Other witnesses for the State largely corroborated Mr. Brizuela's account of the incident, though some of them testified that appellant threw the bottle at Luis Miguel, but it hit Luis Brizuela instead. One witness stated that appellant smashed the beer bottle against the wall and then threw it into the air, not aiming at anyone in particular.

Witnesses for the defense, including appellant, testified that Mr. Brizuela came to the party with two other men who were drunk. They were loud and angry. The security guard told them to leave the clubhouse and they did so, but they remained outside drinking. As the party ended, appellant helped clean up the clubhouse. When he went outside to gather beer bottles, Luis Miguel attacked him and jumped on top of him. Appellant grabbed an empty beer bottle and "cracked" Luis Miguel on the head with it. The bottle exploded. Luis Miguel was stunned, but he lunged

2. *Landrian v. State*, 263 S.W.3d 332, 337 (Tex.App.Houston [1st Dist.], 2007).

3. Appellant and other defense witnesses said that there was no drinking at the party, but that some "party-crashers" had brought beer with them, which they kept outside the clubhouse. According to the defense witnesses, Mr. Brizuela arrived with Luis Miguel who was drunk.

toward appellant again. Other guests separated the two men, and appellant went back inside.[4] Appellant testified that he had acted solely in self-defense. He said that he had no idea that Luis Brizuela had been hurt until the next day when someone told him that Mr. Brizuela had been hit with a piece of glass during the altercation. Appellant was very concerned and tried to call and visit Mr. Brizuela several times, but he did not answer the door or return appellant's phone calls.

Dr. Benz testified that he performed the initial operation on Mr. Brizuela's eye. He thought that the injury was more consistent with an act of throwing a broken bottle into the eye than with the act of breaking a beer bottle over someone's head and a glass shard flying into the eye. Dr. Benz formed this opinion because "this was the largest intraocular foreign body I had ever taken out of an eye. In order for it to penetrate the eye it would take a significant amount of force."

Officer Le, the initial investigator, testified that Mr. Brizuela told him, a day after the incident, that it was "an accident." Mr. Brizuela said that appellant threw the beer bottle at another man and a shard of glass hit Mr. Brizuela in the face. Officer Le also said that a bottle thrown or "slashed" at another person could cause death or serious bodily injury.

The trial judge instructed the jury on aggravated assault and self-defense. The abstract portion of that charge read as follows:

> A person commits the offense of assault if the person intentionally, knowingly, or recklessly causes bodily injury to another.
>
> A person commits the offense of aggravated assault if the person commits assault, as hereinbefore defined, and the person:
>
> (1) causes serious bodily injury to another; or
>
> (2) uses or exhibits a deadly weapon during the commission of the assault.

In the application section, the trial judge submitted the two aggravating factors in disjunctive paragraphs.[5] The jury was not required to be unanimous on which aggravating factor it had found, "serious bodily injury" or "use of a deadly weapon." The trial judge also submitted a special "deadly weapon" issue because he was concerned about a potential unanimity problem. He reasoned that, if the jury found that appellant had used the bottle as a deadly weapon, it would necessarily be unanimous on the second aggravating factor, causing

---

4. Some of the State's witnesses testified that appellant beat the drunken Luis Miguel for five minutes. When Luis Miguel fell to the ground, bloody and motionless, appellant continued to beat and kick him. Appellant then went into the clubhouse and re-emerged with a beer bottle which he broke. Then he threw it straight at Mr. Brizuela who happened to be standing nearby.

5. The application paragraphs read as follows:
Now, if you find from the evidence beyond a reasonable doubt that on or about the 19th day of December, 2003, in Harris County, Texas, the defendant, Carlos Landrian, did then and there unlawfully, intentionally or

knowingly cause bodily injury to Luis Brizuela by using a deadly weapon, namely, a bottle, as alleged in Paragraph 1 of the indictment; or

If you find from the evidence beyond a reasonable doubt that on or about the 19th day of December, 2003, in Harris County, Texas, the defendant, Carlos Landrian, did then and there unlawfully, recklessly cause serious bodily injury to Luis Brizuela by throwing a bottle in the direction of Luis Brizuela, as alleged in Paragraph 2 of the indictment, then you will find the defendant guilty as charged in the indictment.

bodily injury by using a deadly weapon.[6]

After lengthy deliberations and several notes requesting clarification, the jury returned a "guilty" verdict. It also found that appellant had used a deadly weapon. The jury assessed a sentence of seven years' imprisonment, but recommended community supervision.

On appeal, appellant argued that he was "denied the right to a unanimous jury verdict because the charge allowed the jury to convict him of aggravated assault without unanimously determining whether [he] (1) intentionally or knowingly caused bodily injury with a deadly weapon or (2) recklessly caused serious bodily injury." [7] The court of appeals agreed, concluding that "the jury charge presented two types of aggravated assault without requiring the jury to determine unanimously whether appellant caused serious bodily injury as alleged in paragraph one or whether ap-

pellant caused bodily injury as alleged in paragraph two." [8] It held that the error was harmful and remanded the case for a new trial.[9]

## II.

■ Under the Texas Constitution and Code of Criminal Procedure, a Texas jury must reach a unanimous verdict.[10] The jury must agree that the defendant committed one specific crime.[11] That does not mean, however, that the jury must unanimously find that the defendant committed that crime in one specific way or even with one specific act.[12] The Legislature has considerable discretion in defining crimes and the manner in which those crimes can be committed. That discretion is limited only by the Due Process Clause of the federal constitution and the Due Course of Law provision of the Texas Constitution.[13]

6. The trial judge explained:

> I also believe that the State is entitled to a verdict with alternative pleading paragraphs, a general verdict as to that. My concern up to this point was since there was no allegation of deadly weapon in the reckless paragraph, the second paragraph of the indictment, that that would cause a conflict or at least confusion for the Court should the jury find the Defendant guilty with a general verdict and not specify which paragraph.
> My concern was that we would then at that point not know if the jury had reached a verdict on the first paragraph or the second paragraph or some combination thereof and, therefore, would not know if the jury had, in fact, made a finding of guilt as to the use of a deadly weapon.
> . . .
> And, therefore, my solution to the problem is to give the jury the two choices of guilty—pardon me—not guilty or guilty as charged in the indictment, and then to include a special issue which asks the jury whether or not they find—make an affirmative finding of a deadly weapon.

7. *Landrian*, 263 S.W.3d at 336 .

8. *Id.* at 339.

9. *Id.* at 339–42.

10. *See Stuhler v. State*, 218 S.W.3d 706, 716 (Tex.Crim.App.2007); *Ngo v. State*, 175 S.W.3d 738, 745 (Tex.Crim.App.2005).

11. *Stuhler*, 218 S.W.3d at 717–19 (injury to a child is a result-oriented offense; the gravamen of the offense is the specific result—serious bodily injury, serious mental deficiency, bodily injury—"and the degree of the offense is determined, at least in part, according to which of the results the defendant's act or omission caused").

12. *See, e.g., Jefferson v. State*, 189 S.W.3d 305, 312 (Tex.Crim.App.2006) (holding that any " 'act or omission' constitute[s] the means of committing the course of conduct element of injury to a child.").

13. *See Schad v. Arizona*, 501 U.S. 624, 632, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (stating that the Due Process Clause places limits on "a State's capacity to define different courses of conduct, or states of mind, as merely alternative means of committing a sin-

In deciding what elements and facts a jury must unanimously agree on, courts implement the legislative intent behind the penal provision. Both Texas and federal courts have held that the jury must be unanimous in finding that the defendant committed a specific statutory crime.[14] But it is the legislature, not the courts, that defines the forbidden act, the required culpability, and the particular result, if any.[15]

The Texas Legislature has defined the crime of assault in Section 22.01 of the Penal Code. Subsection (a) of that provision sets out three separate and distinct assaultive crimes, two of which are relevant to the present discussion:

(a) A person commits an offense if the person:

    (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

    (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse[.]

Subsection (1)—"bodily injury" assault is a result-oriented assaultive offense and normally a Class A misdemeanor. Subsection (2) is conduct-oriented, focusing upon the act of making a threat, regardless of any result that threat might cause.[16] It is normally a Class C misdemeanor.[17]

Section 22.02 of the Penal Code then defines the crime of aggravated assault as being an assault under Section 22.01, and the person

    (1) causes serious bodily injury to another, including the person's spouse, or

    (2) uses or exhibits a deadly weapon during the commission of the assault.[18]

Normally, Subsection (1) may act as an aggravating factor only for "bodily injury" assault under Section 22.01(a)(1); absent special circumstances,[19] one cannot cause serious bodily injury solely by making a

---

gle offense, thereby permitting a defendant's conviction without jury agreement as to which course or state actually occurred."); *Jefferson*, 189 S.W.3d at 312 (federal due process "fundamental fairness and rationality test . . . focuses on historical practice and the relative moral and conceptual equivalence of the alternate modes or means of committing the crime.").

14. *Schad*, 501 U.S. at 631–33, 111 S.Ct. 2491; *Valdez v. State*, 218 S.W.3d 82, 84 (Tex.Crim. App.2007) (the question of what the jury must be unanimous about is determined by the legislative intent of the applicable statute).

15. *Valdez*, 218 S.W.3d at 84.

16. *See Marinos v. State*, 186 S.W.3d 167, 174–75 (Tex.App.-Austin 2006, pet. ref'd) ("*causing* bodily injury to another and *threatening* another with imminent bodily injury are separately defined statutory criminal acts. . . . [W]e conclude that bodily injury assault and assault by threat are different criminal acts for which a defendant may be convicted only

by a unanimous finding of guilt."); *see also Dolkart v. State*, 197 S.W.3d 887, 893 (Tex. App.-Dallas 2006, pet. ref'd) (concluding that legislature created two separate criminal offenses in defining "bodily injury" assault and assault by threat; noting that "the focus of the two subsections is different: one is intended to punish the defendant for causing bodily injury; the other is intended to punish a defendant for engaging in threatening behavior. Finally, we find support for this determination because the legislature assigned different punishment ranges to the two offenses.").

17. Section 22.01(c) sets out various circumstances that elevate the level of punishment for assault-by-threat from a Class C misdemeanor to a higher level misdemeanor.

18. TEX. PENAL CODE § 22.02(a).

19. For example, it is theoretically possible to make a threat that causes the person to have a heart attack that causes serious bodily injury.

threat. But the use of a deadly weapon may act as an aggravating factor for "bodily injury" assault under Section 22.01(a)(1), as well as assault by threat under Section 22.01(a)(2). Normally, the offense of aggravated assault, regardless of which aggravating factor is used, is a second-degree felony.[20]

The gravamen of the offense of aggravated assault is the specific type of assault defined in Section 22.01. Thus, the *actus reus* for "bodily injury" aggravated assault is "causing bodily injury." Turning to the eighth-grade grammar test, the subject is "the defendant," the verb is "cause" and the direct object is "bodily injury."[21] The precise act or nature of conduct in this result-oriented offense is inconsequential.[22] "What matters is that the conduct (whatever it may be) is done with the required culpability to effect the *result* the Legislature has specified."[23]

This *actus reus* must be accompanied by a culpable mental state. In its "bodily injury" assault subsection, the legislature

stated that any of three culpable mental states suffices: intentionally, knowingly, or recklessly causing bodily injury. The legislature was apparently neutral about which of these three mental states accompanied the forbidden conduct because all three culpable mental states are listed together in a single phrase within a single subsection of the statute. There is no indication that the legislature intended for an "intentional" bodily injury assault to be a separate crime from a "knowing" bodily injury assault or that both of those differ from a "reckless" bodily injury assault.[24] All three culpable mental states are strung together in a single phrase within a single subsection of the statute. All result in the same punishment. They are conceptually equivalent.[25] Because the Penal Code explicitly states that proof of a greater culpability is also proof of any lesser culpability,[26] it would *not matter, for example, if six members of a jury found that the defendant intentionally killed his victim and six members found that he had knowingly killed his victim.[27] The same is true with

---

**20.** Tex. Penal Code § 22.02(b). It may be elevated to a first-degree felony under certain circumstances specified in Subsections (b)(1) and (b)(2).

**21.** Strictly speaking, the direct object is "injury," and the adjective "bodily" describes what type of injury, but because there is no "mental injury" or "emotional injury" assaultive offense (although assault by "offensive contact" is a type of emotional or mental result), one should use the noun phrase "bodily injury" to describe the direct object because an injury that does not cause harm to the body does not qualify under Section 22.01(a)(1).

**22.** *Alvarado v. State,* 704 S.W.2d 36, 39 (Tex. Crim.App.1985).

**23.** *Id.*

**24.** *See Schad,* 501 U.S. at 644, 111 S.Ct. 2491. In *Schad,* the Supreme Court noted that a state may draft a murder statute that allows for the disjunctive submission of different cul-

pable mental states, such as "premeditated murder" and "felony murder," because a legislature might reasonably find that they are morally equivalent alternatives. *Id.*

**25.** *See id.; see also Jefferson,* 189 S.W.3d at 313.

**26.** Tex. Penal Code § 6.02(e) ("Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged."); *see Flores v. State,* 245 S.W.3d 432, 440 (Tex. Crim.App.2008) (noting that "proof of intent would, as a matter of law, establish recklessness as well").

**27.** *See e.g., Lugo–Lugo v. State,* 650 S.W.2d 72, 80 (Tex.Crim.App.1983) (murder is "committed when the conscious objective or desire of the perpetrator was to cause death or where the perpetrator was aware that his conduct was reasonably certain to cause death"); *see also Medina v. State,* 7 S.W.3d 633, 636 (Tex.Crim.App.1999) (capital murder under Tex. Penal Code § 19.03(a)(7)(A) "in-

"bodily injury" assault.[28]

Aggravated assault increases the penalty for simple "bodily injury" assault if the victim suffers a significantly greater degree of bodily harm—serious bodily injury, rather than mere bodily injury. The type of injury does not vary, only the degree of the injury. "Serious" is an adjective that modifies "bodily injury." It does not change the direct object, it merely describes it.

Aggravated assault also increases the penalty for simple "bodily injury" assault if the defendant's manner of committing that assault increases the likelihood of death or serious bodily injury because he used or exhibited a deadly weapon during the assault.

But, as we have recently held, both of these means of committing aggravated bodily assault involve the use of a deadly weapon:

> Aggravated assault may be committed in only two ways: (1) by "caus[ing] serious bodily injury" or (2) by "us[ing] or exhibit[ing] a deadly weapon during the commission of the assault." Each of these involves the use of a deadly weap-

on. The first way necessarily implies the use of a deadly weapon, which is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." The second way specifies the use of a deadly weapon. Therefore an allegation that a defendant committed aggravated assault gives him notice that the deadly nature of the weapon alleged in the indictment would be an issue at trial and that the State may seek an affirmative finding on the use of the weapon.[29]

Thus, both statutory aggravators of simple assault involve the use of a deadly weapon, either because a serious bodily injury is necessarily caused by a deadly weapon or because a deadly weapon is explicitly pled in the indictment.[30]

In sum, simple "bodily injury" assault is punished more severely depending upon the degree of the victim's injury or the manner in which the defendant committed the particular assault. The Texas Legislature has evinced no intent that jurors need be unanimous about which aggravating factor or element that they find—severity of injury or manner in which the defendant

---

cludes within its ambit both intentional and knowing murders"); *Jefferson*, 189 S.W.3d at 309–11 (defendant not deprived of a unanimous jury verdict when jury required to find that he "intentionally or knowingly" caused serious bodily injury to a child by either an act or omission); *Johnson v. State*, 233 S.W.3d 109, 113 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (" 'Although [Texas Penal Code] sections 19.02(b)(1) and (b)(2) differ in their descriptions of the mental state required for culpability, jurors are not required to agree on the defendant's specific mental state; rather, they need only agree that the defendant possessed one of the alternate mental states that satisfy the element of intent under the statute' ") (citation omitted).

**28.** *See Bell v. State*, 693 S.W.2d 434, 438 (Tex.Crim.App.1985) (in aggravated assault

prosecution, noting that "when the State established the higher culpable mental state of intent or knowledge, it necessarily established the lower culpable mental state of recklessness."); *see, e.g., Wells v. Commonwealth*, 561 S.W.2d 85, 88 (Ky.1978) (jury charge in aggravated assault trial properly submitted two distinct culpable mental states—intent and wantonness manifesting extreme indifference to the value of human life—in the disjunctive and did not require unanimity because "[e]ither mental state will support a conviction of assault in the first degree and punishment for such crime. The legal effect of the alternative conclusions is identical.").

**29.** *Blount v. State*, 257 S.W.3d 712, 714 (Tex. Crim.App.2008).

**30.** *Id.*

caused the injury.[31] It is still the same single criminal act and still the same single bodily injury to the victim. Because the aggravated-assault statute defines two or more circumstances or factors by which the defendant's punishment for a specific criminal act is increased, the defendant may be convicted if each juror concludes that at least one of the aggravating factors or elements exist.[32]

Several other states, in analyzing similar aggravated-assault statutes, have also found that their statutes did not set out separate and distinct offenses. Rather, the aggravating factors or elements are simply descriptions of separate means by which a single offense of assault may be committed. As noted by the Alaska Supreme Court in *State v. James*,[33] "Alaska's codification of the common law crime of first-degree assault prohibits only one act: a physical assault." [34] It may be committed in either of two ways—by using "a dangerous instrument" or by causing "serious physical injury"—but it is still one criminal act with one bodily injury to one victim.[35] The same is true when the statutory subsections set out different mental states, but require a single assaultive act.[36]

**31.** *See Marinos*, 186 S.W.3d at 174–75 (concluding that trial judge correctly submitted alternate disjunctive paragraphs for "bodily injury" aggravated assault because those paragraphs set out alternate manners and means, not separate criminal acts); *compare Dolkart*, 197 S.W.3d at 893 (trial court erred in submitting both aggravated assault by causing bodily injury and aggravated assault by threat disjunctively without requiring unanimity on which separate offense jury found); *Gonzales v. State*, 191 S.W.3d 741, 748–49 (Tex.App.-Waco 2006, pet. ref'd) (following *Marinos*, and holding that aggravated assault by causing "bodily injury" is a distinct criminal offense from aggravated assault by threat).

**32.** *Marinos*, 186 S.W.3d at 175.

**33.** 698 P.2d 1161 (Alaska 1985).

**34.** *Id.* at 1167.

**35.** *Id.* at 1163, 1166 ("In the instant case there is only one criminal act alleged and only one incident involved. All twelve jurors agreed that [defendant] had committed the act."). *See also State v. Pena*, 209 Ariz. 503, 104 P.3d 873, 876 (Ariz.Ct.App.2005) ("The jury need not, however, have unanimously agreed on the manner in which Defendant committed aggravated assault as long as each juror found that Defendant committed aggravated assault based on either serious physical injury or use of a dangerous instrument."); *Wells*, 561 S.W.2d at 88 (jury unanimity not required in aggravated assault case in which jury was instructed that it could convict defendant if he inflicted serious physical injury and he (1) intended to cause serious physical injury and used a deadly weapon, or (2) caused serious physical injury under circumstances manifesting extreme indifference to the value of human life by wantonly [recklessly] engaging in conduct that created a grave risk of death); *see generally*, Tim A. Thomas, *Requirement of Jury Unanimity as to Mode of Committing Crime Under Statute Setting Forth the Various Modes by Which Offense May Be Committed*,75 A.L.R.4th 91 (1989 & Cumulative Supp.).

**36.** *State v. Richardson*, 24 Wash.App. 302, 600 P.2d 696, 698 (1979) (instruction given in second-degree assault prosecution, which authorized conviction if defendant either knowingly inflicted grievous bodily harm upon victim or if he caused that harm by criminal negligence, did not deny defendant a unanimous jury verdict). The Washington Legislature had expressly stated that proof of a knowing mental state is sufficient to prove criminal negligence, and the court explained that

> [t]he rationale behind this statute doubtlessly is that, if one acts carelessly, the social vice of his conduct is sufficient to warrant a conviction and, if he possesses actual knowledge so that his social conduct is even more offensive, he should at least be liable equally with one who is merely negligent. This is particularly true because the penalty is the same in either case, and one should not be able to escape liability for negligence by saying that he was not negligent because he acted willfully or knowingly.

With that general background, we turn to the present case.

### III.

In the court of appeals and in this Court, appellant argues that "bodily injury" aggravated assault is really composed of two separate and distinct criminal offenses. He is mistaken. He begins by correctly noting that the statutory definition of simple assault sets out three distinct criminal offenses under Section 22.01(a)(1)-(3). These are "bodily injury" assault, assault by threat, and "offensive contact" assault. So far, so good. But he then contends that "adding the aggravating elements to the simple assault statute" creates "several different combinations" and "a variety of different ways of having an aggravated assault."[37] That is true only if the underlying simple assault is pled as both "bodily injury" assault and assault by threat. In *Marinos v. State*,[38] *Dolkart v. State*,[39] and *Gonzales v. State*,[40] three different courts of appeals properly held that simple "bodily injury" assault is a separate and distinct crime from simple assault by threat.[41] Thus aggravated assault under each distinct assaultive crime is a separate crime: aggravated assault with the underlying crime of assault by causing bodily injury and aggravated assault with the underlying crime of assault by threat.[42] The first is a result-oriented offense and the second is a conduct-oriented offense.

But once the underlying type of assault is defined, then either of the aggravating factors set out under Section 22.02(a) may elevate that distinct assaultive crime to a second-degree felony. The aggravating factors or elements are simply the way in which the simple assault becomes a more serious offense.

In this case, for example, there is no dispute that appellant committed one single assaultive act—he caused bodily injury to Luis Brizuela. He caused this result by (1) throwing a broken beer bottle at Mr. Brizuela, (2) throwing a beer bottle at Luis Miguel, (3) throwing a broken beer bottle into the air, or (4) "crashing" a beer bottle on Luis Miguel's head. Under the State's version of facts, there was no dispute that appellant wielded a beer bottle and that glass from that bottle hit Mr. Brizuela in the eye.[43] Regardless of which version of the facts the jury believed, there was only one criminal act and it involved a beer bottle which blinded Mr. Brizuela in the left eye. There was no dispute that Mr. Brizuela suffered a serious bodily injury.

---

*Id.* at 698 n. 2.

37. Appellant's Brief at 15.

38. 186 S.W.3d 167, 174–75 (Tex.App.-Austin 2006, pet. ref'd).

39. 197 S.W.3d 887, 893 (Tex.App.Dallas 2006, pet. ref'd).

40. 191 S.W.3d 741, 748–49 (Tex.App.-Waco 2006, pet. ref'd).

41. *Marinos*, 186 S.W.3d at 174–75; *Dolkart*, 197 S.W.3d at 893; *Gonzales*, 191 S.W.3d at 748–49.

42. *Marinos*, 186 S.W.3d at 174–75; *Dolkart*, 197 S.W.3d at 893; *Gonzales*, 191 S.W.3d at 748–49. In *Marinos*, for example, the court of appeals stated that the trial court "erred by failing to require a unanimous verdict of finding him guilty of either aggravated bodily injury assault or aggravated assault by threat." 186 S.W.3d at 174. These two aggravated offenses depend upon separate criminal acts. However, the court of appeals further explained that jury unanimity was not required "with respect to the specific manner or means by which the aggravated bodily injury assault or aggravated assault by threat was committed." *Id.* at 175. The aggravating factors are simply different manners of committing a single offense. *Id.*

43. The defensive theory was that he wielded the bottle solely in self-defense.

There was no dispute that the broken beer bottle was capable of causing (and did cause) a serious bodily injury. Indeed, the jury unanimously found that the beer bottle was a deadly weapon.

The eighth-grade grammar test shows that appellant (the subject) caused (the verb) a bodily injury (the direct object) to one person, Mr. Brizuela. Under one aggravating factor, the degree (but not the type) of the bodily injury suffered by Mr. Brizuela was increased from simple "bodily injury" to "serious bodily injury." These were not two distinct injuries; they were not two different types of injuries. They were the same bodily injury, but one was more serious in degree than the other and thus deserving of greater punishment.[44] Under the other aggravating factor, appellant need not have caused serious bodily injury (though there was no dispute that he did), but he must have used a deadly weapon to cause bodily injury. The second aggravating factor describes "how" he caused a bodily injury and modifies the verb "caused." Under each theory, the gravamen of the offense was the same.

Yet another way of testing whether the State charged one aggravated assault or two distinct and separate aggravated assault offenses is to ask whether the State could have obtained two aggravated assault convictions stemming from appellant's criminal conduct. Would double jeopardy allow appellant to be punished for causing serious bodily injury by putting out Mr. Brizuela's left eye and also punished for putting out Mr. Brizuela's left eye with a deadly weapon by throwing a bottle at or in his direction? The answer is obvious: appellant committed only one assault during a single incident and may be punished for only one assault.[45]

Appellant and the court of appeals incorrectly concluded "that the trial court erred in submitting a jury charge without requiring the jury unanimously to agree that appellant either intentionally and knowingly caused bodily injury [while using a deadly weapon] or recklessly caused serious bodily injury." [46] We hold that the

44. The court of appeals relied heavily upon this Court's reasoning in *Stuhler v. State,* 218 S.W.3d 706 (Tex.Crim.App.2007), in concluding that "bodily injury" aggravated assault is really two separate crimes depending on which aggravating factor is proven. *Landrian,* 263 S.W.3d at 338-39. But in *Stuhler,* we noted that the Legislature defined three separate and distinct results—serious bodily injury, serious mental deficiency, or plain bodily injury—in the injury to a child statute. 218 S.W.3d at 718. Two of those results—serious bodily injury and serious mental deficiency—are entirely different types of injuries; one is physical and the other mental. They are equally culpable and thus subject to the same punishment range. Two of those results—serious bodily injury and plain bodily injury—are the same type of injury, but they differ in degree. They are listed in separate subsections of the statute because they have different punishment ranges, with serious bodily injury being punished more severely than simple bodily injury. *See* Tex. Penal Code § 22.04(a),

(e) & (f). In contrast, aggravated "bodily injury" assault is a second-degree offense regardless of which aggravating factor applies. Simple "bodily injury" assault is punished as a misdemeanor under Section 22.01(a)(1), while aggravated "bodily injury" assault is punished as a second-degree felony. They are not equally culpable crimes and are not the same criminal offense, but they are both based upon a single act of causing "bodily injury."

45. *See State v. James,* 698 P.2d 1161, 1166 (Alaska 1985) ("When a defendant commits first degree assault by any of the three methods, the victim is fortunate to survive. Moreover, we find no evidence that the legislature intended by [the aggravated assault statute] to expose defendants to multiple punishments. We may therefore assume that a single punishment was envisioned for violation of the statute.").

46. *Landrian,* 263 S.W.3d at 339.

trial judge did not err in his instructions concerning a unanimous jury verdict.

We therefore reverse the judgment of the court of appeals and remand the case to that court to address appellant's remaining points of error.

PRICE, J., filed a concurring opinion in which MEYERS, J., joined.

WOMACK, J., filed a concurring opinion in which KELLER, P.J., and KEASLER, J., joined.

PRICE, J., filed a concurring opinion in which MEYERS, J., joined.

I agree that there is no jury unanimity problem in this case. The jury's affirmative answer to the special "deadly weapon" issue guaranteed that all of the jurors *at least* found the appellant guilty of aggravated assault under the theory that he caused bodily injury and used or exhibited a deadly weapon in the process. Under these circumstances, it does not matter that the jury might not *also* have unanimously found that the appellant was guilty under the other, "serious bodily injury" theory of aggravated assault. On the peculiar facts of this case, we can be certain that the jury unanimously found him guilty of at least one of the two ways of committing aggravated assault for which they were disjunctively authorized to find him guilty.

The majority goes on to hold that the jury need not have unanimously found that the appellant was guilty under at least one of these disjunctively-charged theories of aggravated assault, as long as it unanimously found he was guilty under one or the other. I am far from sanguine about

this conclusion, for the reasons that follow. In any event, because I find it unnecessary to reach the issue on the facts of this case, I concur in the Court's decision to reverse the judgment of the court of appeals, but do not join its opinion.

In *Stuhler v. State*,[1] a majority of the Court endorsed the so-called "eighth-grade grammar test" as a rule of thumb for deciding which alternative theories of an offense constitute separate elements, upon which jurors must agree unanimously, and which are simply alternative manner and means for satisfying an element of the offense, upon which jurors need not agree.[2] As I think is illustrated by the Court's subsequent opinion in *Pizzo v. State*, this rule of thumb is not fool-proof.[3] In the instant case, the Court utilizes the eighth-grade grammar test to decide that the alternative ways of elevating a simple assault to an aggravated assault are simply manner and means of committing aggravated assault, not discrete elements. The Court comes to this conclusion by identifying "bodily injury" as the gravamen of the offense of *aggravated* assault. The alternative ways that simple assault can be elevated to aggravated assault simply constitute manner and means by which the gravamen of bodily injury can be perpetrated such that a greater range of punishment may be imposed. I am *dubitante*.

It seems likely to me that the Court is mistaken to conclude that simple bodily injury constitutes the entire gravamen of the offense of *aggravated* assault. Simple assault and aggravated assault are separate offenses. The Legislature has chosen to enact them in two separately numbered

1. 218 S.W.3d 706 (Tex.Crim.App.2007).

2. *Id.*, at 718, adopting Judge Cochran's concurring position in *Jefferson v. State*, 189 S.W.3d 305, 315–16 (Tex.Crim.App.2006).

3. 235 S.W.3d 711, 719–722 (Price, J., concurring).

penal provisions.[4] Aggravated assault is defined as a simple assault, *plus* the addition of one of two statutorily defined aggravating factors. While it is clear that the gravamen of *simple* assault (at least simple assault as defined in Section 22.01(a)(1) of the Penal Code) is causing bodily injury, one would think that the gravamen of *aggravated* assault must be, in legislative contemplation, causing bodily injury—*plus something more*. After all, what separates one discrete statutorily defined offense from another is that one must have at least one distinct *element* that the other does not.

Section 22.02(a) embodies two alternative aggravating factors. The first is that the defendant must cause, not just bodily injury, but *serious* bodily injury. This is a result-of-conduct type factor. The second aggravating factor is the use or exhibition of a deadly weapon. This is a nature-of-conduct type factor. It seems quite plausible to me to argue that the aggravated assault statute thus embodies two very distinct gravamens, and that bodily injury constitutes a subset-gravamen of each. The first aggravated assault gravamen is that the defendant caused *serious* bodily injury. The second is that the defendant caused bodily injury and *brandished a deadly weapon* in the process. Are these not elemental? Are they not, in fact, the

very additional elements that distinguish aggravated assault from simple assault? If they are not, then what statutory element *does* distinguish the offense of simple assault from the separate offense of aggravated assault?

The Court seems to acknowledge that the various ways of committing *simple* assault, embodied in Subsections 22.01(a)(1) through (a)(3) of the Penal Code, constitute distinct alternative statutory *elements* for the commission of *that* offense, not alternative manner and means. As the Court notes, there are the "bodily injury" and "physical contact" theories of simple assault, which are result-of-conduct theories of the offense, and then there is the "threat-of-imminent-bodily injury" theory, which is a nature-of-conduct theory of the offense. If I am not mistaken, I think the Court means to suggest that it regards these three theories to constitute separate, alternative *elements* of the offense of simple assault. They do not merely describe *how* the offense may be committed, but instead define what conduct constitutes the commission of the offense.[5] Why, then, does the Court not similarly conclude that "serious bodily injury," a result-of-conduct theory, and "use or exhibition of a deadly weapon" while causing bodily injury, a nature-of-conduct theory, also constitute sep-

---

4. Tex. Penal Code § 22.01(a) defines simple assault:

(a) A person commits an offense if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

(3) intentionally or knowingly causes physical contact with another person when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Aggravated assault is defined in Tex. Penal Code § 22.02(a), which reads:

(a) A person commits an offense if the person commits assault as defined in § 22.01 and the person:

(1) causes serious bodily injury to another, including the person's spouse; or

(2) uses or exhibits a deadly weapon during the commission of the assault.

5. *See Jefferson v. State, supra,* at 315 (Cochran, J., concurring) ("the specifics of how the defendant [caused a particular result] are *not* the gravamen of the offense and not the statutorily prohibited conduct.").

arate alternative *elements* of aggravated assault?

In short, it seems doubtful that the gravamen of *aggravated* assault is *just* bodily injury. I am not at all sure that in order to set aggravated assault apart from simple assault, as the Legislature has done by defining the two offenses in different statutory provisions, we should not conclude that the gravamen of aggravated assault is either *serious* bodily injury, or else bodily injury *plus the use or exhibition of a deadly weapon.* Applying the eighth-grade grammar test to determine the elements of the offense as thus understood, we would presumably find the elements to be, at a minimum: the subject (the defendant); the main verbs ("causes" and/or "uses or exhibits"); and the direct objects ("bodily injury," "serious bodily injury," and/or "a deadly weapon"). By this reckoning, all of these statutory alternatives are *elements* of the offense of aggravated assault, not mere manner and means. Therefore, if they are pled alternatively in the indictment, the jury must be instructed that it must unanimously find one or the other (or both) before it may convict.

But I need not ultimately resolve this question today in order to agree that there is no jury unanimity problem in this particular case. It is clear here that all twelve jurors found that the appellant caused bodily injury and used or exhibited a deadly weapon in the process. I therefore concur.

WOMACK, J., filed a concurring opinion, in which KELLER, P.J., and KEASLER, J., joined.

Without implying that there is anything wrong with the Court's analysis of the jury-unanimity issue, I should like to point out that there is no possibility of a non-unanimous verdict for this offense as it was alleged. If half the jury believed the defendant caused serious bodily injury, then they necessarily believed that a deadly weapon was used. A deadly weapon is anything that in the manner of its use was capable of causing serious bodily injury. See Penal Code section 1.07(a)(17)(B). It is impossible to inflict serious bodily injury without using a deadly weapon. We so held only a couple of months ago. *See Blount v. State,* 257 S.W.3d 712 (Tex.Cr. App.2008).