

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-16-00219-CR

GRAHAM NEAL LAND, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 2015F00235

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

Graham Neal Land was charged with and convicted by a jury of assaulting his brother, Andrew Glenn, March 13, 2015, with a knife. Their dispute arose over a controversy between them regarding what each believed was the fair use of a quantity of marihuana and a marihuana pipe. After the jury convicted Land of aggravated assault with a deadly weapon[1] and the trial court assessed him a punishment of forty-five years' imprisonment, Land has appealed.

On appeal, Land (1) challenges the legal sufficiency of the evidence[2] supporting the jury's verdict and (2) complains that the trial court erred in denying his request for a jury instruction on deadly force to protect property.[3] We find (1) that there was legally sufficient evidence to support Land's conviction and (2) that the trial court did not err in denying Land's request for a jury instruction on deadly force to protect property. Consequently, we will affirm the judgment of the trial court.

## I.     Evidence at Trial

After the stabbing, Glenn was taken by a family friend, Megan Major, to Christus St. Michael's Hospital in Atlanta to be treated for a knife wound. At the treatment facility, Glenn

---

[1]*See* TEX. PENAL CODE ANN. § 22.02(a), (b)(1) (West 2011).

[2]Although Land purports to also challenge the factual sufficiency of the evidence supporting the jury's verdict, as the Court of Criminal Appeals has explained, "We do not review the factual sufficiency of the evidence to support a jury's finding on the elements of a criminal offense that the State is required to prove beyond a reasonable doubt." *Lucio v. State*, 351 S.W.3d 878, 895 (Tex. Crim. App. 2011) (citing *Martinez v. State*, 327 S.W.3d 727, 730 (Tex. Crim. App. 2010); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.); *Brooks*, 323 S.W.3d at 926 (Cochran, J., concurring, joined by Womack, J.)). Rather, the "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.).

[3]*See* TEX. PENAL CODE ANN. § 9.42 (West 2011).

told hospital personnel and Atlanta Police Captain Steve Crowmeans that he had been assaulted by two black men wearing hoodies near the Sonic drive-in in Atlanta as he walked from Joe Allred's[4] house to the Walmart store. However, Crowmeans was able to determine that Glenn had been stabbed while near the Allred residence outside the City of Atlanta and alerted Cass County Sheriff Deputy Don Howard.

Howard testified that he arrived at the Allred residence and spoke with Land, William Dees, and Herschel Tyson. Cass County Sheriff Sergeant Ronny Penny interviewed Dees and James Riley. Howard's dash camera recorded Howard's conversation with Land and the resulting recording was shown to the jury. That recording revealed that Land acknowledged that Glenn was his brother, but he then denied having fought with him. In that interview, Land maintained that he was in bed asleep, that he heard a commotion, and that someone told him that Glenn had been stabbed. On the recording, Dees and Tyson are heard saying that nobody saw anything, except Glenn coming in holding his neck and bleeding. After interviewing Land, the officers searched the area around Land's camper and found a paring knife behind the camper. Both Howard and Penny testified that the knife was clean on the top, but that the underside was bloody. They also testified that the concrete was wet and that it appeared that someone had washed it off.

Penny also testified that Dees told him that on the night of the incident, there had been a disturbance between Land and Glenn behind her residence and that Glenn had come in the shop building where he and Riley were saying that he had been stabbed. Although neither Dees nor Riley actually saw what happened, Dees indicated that Land and Glenn were the only two people

---

[4]Allred is Glenn's step-father.

3

down by the camper when the incident happened. Dees also told him that after Glenn entered the shop, Land also entered the shop holding a knife to his throat and saying he was going to kill himself.

After Glenn was released from the hospital, his father brought him to talk with William Page, a criminal investigator for the Cass County Sheriff's Department. Page testified that Glenn told him that he and Land had been smoking marihuana the day of the incident and that Glenn had supplied the marihuana and Land provided the pipe. When Glenn was taking his turn smoking the pipe, Land asked for it, but Glenn told him to wait since he wanted to use it to smoke more of the drug. The controversy between them escalated and the two became very agitated and angry with one another. Land went inside the camper, and retrieved the paring knife. When he came back out, Land told Glenn he was going to stab him if he did not give him the pipe and leave. Land then picked up Glenn's backpack and threatened to throw it in the wet yard. When Glenn attempted to grab the backpack, Land stabbed him in the neck. Glenn then ran to his mother's house and asked to be taken to the hospital because of the stabbing, and he was taken to the hospital by Majors.

Page also testified that Glenn told him that he had fabricated the story about the two black men in an effort to prevent either himself or his brother from getting into trouble. After the interview, Glenn agreed to allow Page to obtain two buccal swabs for DNA testing. At trial, Glenn admitted giving a false statement to Crowmeans, but then claimed he did not remember telling him about two black males robbing him at Walmart. He also claimed he did not remember giving statements to any other officers. He admitted being at Allred's and being with Land at Land's

4

camper on the night of the incident. Glenn also admitted that he and Land were smoking marihuana from a pipe, that after he had taken a few hits, Land asked for the pipe, and that he did not give it to him. He admitted that Land got upset and kept asking for the pipe and that Land got the paring knife. Glenn said that the knife was in Land's right hand by his side and that Land then grabbed Glenn's bag with his left hand and threatened to throw the bag in the water. He testified that he grabbed for the bag and that at that point, the knife went into his throat. He maintained, however, that he leaned into the knife and that the stabbing was the result of a simple accident.

Glenn also admitted that he had posted several photographs of himself in the hospital on his Facebook page. He admitted that he posted comments to the photographs that said, "Hell yeah, it was my own brother of all people," and "My own f-ing brother tried to kill me." On cross-examination, Glenn testified that he had been drinking for eight hours before the incident and that he had consumed more than five Margaritas, as well as a few shots of Jack Daniels. He also said that he had smoked a dime bag of marihuana. He testified that as a result, he eventually blacked out that night and that he only remembers bits and pieces. He also said that he did not remember Land saying anything ugly, confrontational, or violent that night and that Land did not extend the knife towards him in a stabbing motion. Glenn also testified that he did not want his brother prosecuted or to see him go to the penitentiary.

In addition, Page testified that he interviewed Land on March 16, three days after the incident, at which time Land reiterated the story he had previously told Howard. The next day, Page obtained an arrest warrant for Land, but found out from Allred that Land had absconded. Land was arrested on March 27 by Texarkana police. On March 30, Page attempted to take Land's

5

recorded statement in jail. He testified that when he attempted to advise Land of his *Miranda*[5] rights, Land became very agitated and told Page that he did not want Page to read him his *Miranda* rights or to have his statement recorded. Land then kept talking and said that Glenn had come to his residence messing with him and that Land had a knife and told Glenn that if he did not leave, he would stab him. Land then said that Glenn came at him and ran into the knife, but that Land did not try to stab him. Page testified that he again tried to relate the *Miranda* warnings to Land and record his statement, but Land asked for a lawyer, so Page ended the interview.

Dees and Riley testified consistent with the statement they had given to Penny. Dees added that when Land came in, he had a panicked look on his face, held the knife to Glenn's throat, and said that he did not want to go to jail. Major testified that she saw Glenn and Land walk from the house to the camper talking loudly. When they got to the camper, they got louder, and the incident happened shortly thereafter. She acknowledged that she also told the police that she had seen them yelling and scuffling, but that she thought at the time it was a brotherly scuffle. She also testified that when she took Glenn to the hospital, blood was coming from his fingers and down his shirt and that it would gurgle and spurt. As a result, blood got all over her car, including the roof, the rearview mirror, and the windshield.

The State also put on evidence that showed that a DNA analysis of the blood on the blade of the knife was almost certain to have been that of Glenn. Testimony also showed that Glenn was diagnosed at the Atlanta hospital with a life-threatening situation as a result of the knife wound.

---

[5]*See Miranda v. Arizona* 384 U.S. 436 (1966).

6

## II.    Sufficient Evidence Supports the Jury's Verdict

In his first point of error, Land challenges the legal sufficiency of the evidence supporting the jury's verdict. In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 912 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In drawing reasonable inferences, the jury "may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)). Further, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and it may "believe all of a witnesses' testimony, portions of it, or none of it." *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014).

In our review, we consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common

design to do the prohibited act." *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). It is not required that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* Under the statute and the indictment, the State was required to show beyond a reasonable doubt that Land (1) intentionally, knowingly, or recklessly (2) caused serious bodily injury (3) to Glenn (4) who was a member of Land's family (5) by stabbing Glenn in the neck with a knife (6) while exhibiting or using the knife as a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a), (b)(1). Land only challenges the sufficiency of the evidence showing he intentionally caused Glenn's injuries.[6] However, the State did not have to show that Land intentionally caused the injuries. Rather, the State could carry its burden by showing that Land

---

[6]Although not addressed by Land, we find that the evidence supports the jury's implicit findings regarding the other elements of the charged offense.

8

either intentionally, knowingly, or recklessly caused the injuries. *See Landrian v. State*, 268 S.W.3d 532, 537 (Tex. Crim. App. 2008).

Aggravated assault is a result-of-conduct offense. *Id.* "A person acts intentionally, or with intent, with respect . . . to a result of his conduct when it is his conscious objective or desire to . . . cause the result." TEX. PENAL CODE ANN. § 6.03(a) (West 2011). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." TEX. PENAL CODE ANN. § 6.03(b) (West 2011). "A person acts recklessly, or is reckless, with respect to . . . the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." TEX. PENAL CODE ANN. § 6.03(c) (West 2011). Further, "[t]he risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

Land argues that no reasonable jury could find that Land intentionally stabbed Glenn since Glenn testified that the injury was caused by accident due to his having "leaned into" the knife. However, it was shown that Glenn also posted a comment on his Facebook page within days after the incident stating that his own brother, Land, had tried to kill him. He also gave a statement to Page that Land had become agitated and angry and that he went into the camper, got the knife, and threatened to stab him if Glenn did not give him the marihuana pipe. In addition, the jury could reasonably discount Glenn's claim that the stabbing was an accident and that he leaned into the knife, considering (1) the testimony that Glenn had previously fabricated a lie (apparently in an

9

effort to protect Land) that his injury was the result of an attack by two black men and (2) Glenn's trial testimony that he did not want his brother prosecuted or sent to the penitentiary as a result of the stabbing. In addition, the jury heard Land's repeated denials to police officers that he had fought with his brother, his denials that he knew anything about the incident, and his assertion that he was asleep in his camper when the incident happened, all of which was controverted by other testimony. They also heard his eventual admission that he had threatened to stab Glenn with the knife. Based on this evidence, a rational jury could reasonably infer that Land intentionally, knowingly, or recklessly caused Glenn's injuries.

Consequently, we find that there was legally sufficient evidence to support the jury's verdict. We overrule Land's first point of error.

## III. The Trial Court Did Not Err in Refusing to Give the Requested Jury Instruction

Land also complains that the trial court erred in refusing to give his requested instruction on deadly force to protect property.[7] *See* TEX. PENAL CODE ANN. § 9.42. We employ a two-step process in our review of alleged jury charge error. *See Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32).

Chapter Nine of the Penal Code (which contains the above-referenced Section 9.42) is entitled "Justification Excluding Criminal Responsibility." TEX. PENAL CODE ANN. §§ 9.01–.63

---

[7]During the charge conference, Land objected to the trial court's omission of an instruction on "self-defense of property" and then clarified that he was requesting a charge "substantially set forth in Section 9.42 of the Penal Code."

(West 2011). "It includes justifications such as necessity and public duty, and explains the justification aspects of protection of persons and property." *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999). If the conduct in question is justified under one of the provisions of chapter nine, it is a defense to prosecution. TEX. PENAL CODE ANN. § 9.02; *see Young*, 991 S.W.2d at 838. However, a defendant is entitled to an instruction involving one of the justification defenses "only . . . when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct." *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007).

Land's brief contains no reference to any evidence in the record wherein it is alleged that he admitted to any of the elements of the charged offense and our independent review reveals no such admission. To the contrary, in his opening statement at trial Land repeatedly referred to the "alleged act," emphasized that there were no third-party witnesses to the incident, emphasized the lack of fingerprint and DNA evidence linking Land to the incident, and attacked Glenn's credibility. In his cross-examination of witnesses, Land sought to emphasize that no third-party witnesses saw Land stab Glenn, Glenn's prior fabricated explanation regarding his injuries, Land's continued denial of involvement, the brothers' intoxication, and the lack of fingerprint and DNA evidence linking Land to the knife. In cross-examining Glenn, he emphasized Glenn's testimony that he had fallen into the knife and elicited testimony that Land did not extend the knife toward him in a stabbing motion. Finally, in his final argument, rather than admitting the elements of the offense, Land emphasized that he is presumed innocent, that Land denied fighting with Glenn, that the brothers were intoxicated, that there were no third-party witnesses to the stabbing, that there

11

was no fingerprint or DNA evidence linking Land to the knife, and that Glenn testified that he fell into the knife and that there was no stabbing. The only evidence that Land ever admitted any involvement in the incident was his oral statement to Page, a statement in which he had alleged that Glenn ran into the knife. Thus, rather than admitting the elements of the offense, Land, through his argument, cross-examination, and defensive evidence, consistently maintained that he was innocent of aggravated assault and that Glenn's injuries resulted from Glenn running into the knife. Consequently, Land was not entitled to a defensive instruction on deadly force to protect property.

Since the record does not show that Land either admitted, or through the defensive evidence essentially admitted, to all of the elements of the charged offense, we find that the trial court did not err in refusing to give an instruction on deadly force to protect property. We overrule Land's second point of error.

For the reasons stated, we affirm the judgment of the trial court.

Bailey C. Moseley<br>
Justice

Date Submitted:  September 1, 2017
Date Decided:   September 20, 2017

Do Not Publish

12