**Reversed and Remanded and Opinion Filed March 20, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00637-CR

**BILLY JOE WHITE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F-11-55273-X**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Francis

After a confrontation with a tow truck driver, Billy Joe White was indicted on a felony charge of aggravated assault by threat with a deadly weapon. After hearing the evidence, a jury acquitted appellant of the felony charge and convicted him of the lesser-included offense of assault by threat, a Class C misdemeanor. The trial court, however, assessed punishment as if the charge were a Class A misdemeanor: one year in the county jail, probated for one year, and a $250 fine.

In four issues on appeal, appellant complains about the sufficiency of the evidence to support his conviction, errors in the judgment, and the assessment of costs. The State brings a cross issue related to the illegal sentence. We overrule appellant's sufficiency complaint but sustain the State's sentencing issue. Because the punishment assessed was outside the range

authorized by law, we reverse the trial court's judgment as to punishment and remand for a new punishment hearing.

Steven Ochoa is a tow truck driver for Choice Towing. Choice Towing contracts with properties to provide towing services for vehicles that have expired registration or inspection stickers. Ochoa patrols the properties and places a sticker on the vehicles that are in violation, and the owners have ten days to remedy the violation or call the office. If the vehicles are on the tow list ten days later, he tows them. Ochoa was paid $30 per tow.

In May 2011, Creek Bend Condominiums in Dallas was a customer of Choice Towing. On the afternoon of May 10, Ochoa was in the process of towing a Ford Taurus with expired tags that was parked at the condominiums. Ochoa was strapping a rear wheel to the wrecker when appellant came out of a unit and asked Ochoa what he "was doing with his freaking car." Ochoa told appellant the car "was stickered" for ten days and was due to be towed. He also told appellant if he had taken care of his business, he "wouldn't have to be out here messing with this car." Appellant said he was "going to take care of my business" and walked back into his condo. Ochoa said appellant was angry and upset.

Ochoa said he is required to stop the tow if he is confronted by the owner of the vehicle. So, Ochoa said he took the strap off the car, let it down from the boom, pulled the wrecker out from under the car, and ceased the tow. He was getting ready to leave when appellant appeared at his driver's side window, put a gun to his head, and "said a bunch of things." Appellant then reached into the truck with his left hand and slapped Ochoa in the face. Appellant then testified to the following:

[STATE]: How did he slap you?

[OCHOA]: He reached through the window and slapped me in the face.

[STATE]: Did you feel threatened at this point?

–2–

[OCHOA]: Well, sure.

[STATE]: Did you feel like you were in danger of bodily injury?

[OCHOA]: He had it going his way at the moment.

[STATE]: What do you mean by that?

[OCHOA]: Well, when he stuck the gun to my head, I am figuring it's over. *And then he slapped me, then he had this little smirk on his face like that felt pretty good; I am going to try it again.*

[STATE]: Do you think that's because you were scared:

[OCHOA]: Well, like I said, he had control of the situation with the gun.

[STATE]: Okay.

[OCHOA]: I couldn't do anything.

[STATE]: Okay.

[OCHOA]: *Several times after that he would try to reach back in and slap me again.* I grabbed my crescent wrench or a pair of pliers, whatever I had there handy and I was just determined I was going to pop him in the head, you know. By the time when he tried to slap me and I would move, he would come back with the gun. He did that several times. And --

(Emphasis added.) Ochoa said he was finally able to push his door open, hitting appellant, and drive off. He immediately called the police and reported the incident.

Senior Corporal David Gomez of the Dallas Police Department was training an officer that day and responded to the call. After meeting with Ochoa, he went to appellant's home and talked to him. Appellant acknowledged there had been a disturbance but denied using a gun. Instead, he told Gomez he had a flashlight. Gomez ran a check on appellant, found outstanding warrants, and arrested him. On cross-examination, Gomez acknowledged a witness to the incident said he watched the disturbance through a window but did not see a gun. Gomez said he did not obtain a warrant to search the condominium for a gun.

Appellant testified he was sitting in his condo when he heard a noise and looked outside and saw his car was about to be towed. Appellant's testimony was generally consistent with

–3–

Ochoa's on the initial conversation, but appellant said his car had not been "stickered." When Ochoa did not drop his car, he straddled the boom so Ochoa could not tow it. The two had a "stare down" and Ochoa threatened to shove a pair pliers into his skull if he did not move. Appellant then went into his condo and grabbed a flashlight for protection. He went back outside, and Ochoa was removing the strap from the wheel. Appellant said his car had been scratched in the process, and he asked who was going to pay his damages. Ochoa told him to "call the office." Appellant said he was trying to get the telephone number from the wrecker door when Ochoa swung the door open, hit him, and left. As he was leaving, Ochoa said he was calling the police and guaranteed he would have appellant's car by midnight.

About five minutes later, five to six police officers were at his door. They put appellant in handcuffs as they went through his condominium and questioned him about the encounter. He repeatedly told the police he did not have a gun, but they did not believe him. At trial, appellant denied having a gun, threatening Ochoa with a gun or flashlight, and denied slapping Ochoa. He also said the neighbor who witnessed the incident had since died.

After all the evidence was presented, the jury acquitted appellant of aggravated assault by threat with a deadly weapon and convicted him of the lesser-included offense of assault by threat. Appellant elected to have the trial court assess punishment. No additional evidence was presented. Defense counsel asked for probation, and the State asked for "pretty strict guidelines, not just make this some blow off misdemeanor probation." The trial court assessed punishment at one year in county jail, probated for one year, and imposed a $250 fine as a condition of probation.

In his first issue, appellant contends the evidence is insufficient to support his conviction. In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the

essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury, as sole judge of the witnesses' credibility and the weight to be given their testimony, is free to accept or reject any and all evidence presented by either side. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).

A person commits assault if he intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse. TEX. PENAL CODE ANN. § 22.01(a)(2) (West Supp. 2013). Threats may be communicated by action or conduct as well as by words. *McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984).

The jury obviously did not believe appellant had a gun but did believe appellant threatened Ochoa with imminent bodily injury. The evidence supports that finding. As outlined above, the evidence showed appellant was upset about the tow and demanded Ochoa put his car down. After appellant went inside and then returned to the wrecker, he reached inside and slapped Ochoa's face and tried to slap him several more times. We conclude this evidence of appellant's conduct was sufficient to support a finding that appellant intentionally or knowingly threatened Ochoa with imminent bodily injury. We overrule the first issue.

Because it impacts the remaining issues, we next address the State's cross issue that the trial court imposed an illegal sentence. Appellant was convicted of assault by threat. TEX. PENAL CODE ANN. § 22.01(a)(2). An offense under subsection (a)(2) is a Class C misdemeanor, except in circumstances not applicable here. *See id.* § 22.01(c); *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008) (noting that subsection (a)(2) is normally Class C misdemeanor). A person adjudged guilty of a Class C misdemeanor shall be punished by a fine not to exceed $500. TEX. PENAL CODE ANN. § 12.23 (West 2011).

Here, the trial court assessed punishment at one year in jail, probated for one year, and imposed a $250 fine as a condition of probation; consequently, the punishment assessed was

outside the range of that authorized by law.  We sustain the State's cross issue.  Given our disposition of this case, we conclude appellant's complaints regarding errors in the judgment are moot. And, we leave the issue regarding court costs for the trial court's consideration on remand.

We reverse the trial court's judgment as to punishment and remand this case for a new punishment hearing.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
130637F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BILLY JOE WHITE, Appellant

No. 05-13-00637-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 6, Dallas County, Texas
Trial Court Cause No. F-11-55273-X.
Opinion delivered by Justice Francis;
Justices Bridges and Lang-Miers
participating.

Based on the Court's opinion of this date, the judgment of the trial court is REVERSED and the cause REMANDED for further proceedings pursuant to Tex. Code Crim. Proc. Ann. Art. 44.29(b).

Judgment entered March 20, 2014

/Molly Francis/

MOLLY FRANCIS
JUSTICE