**Opinion issued February 24, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

NO. 01-24-00404-CR

NO. 01-24-00406-CR

————————————

**TRAYVON TYRONE MAY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 21st District Court**
**Washington County, Texas**
**Trial Court Case Nos. 19474, 19475**

## MEMORANDUM OPINION

Appellant Trayvon Tyrone May was convicted for evading arrest and two

counts of aggravated assault against a public servant.  He appeals his convictions for

aggravated assault,[1] contending the evidence is insufficient to support the *mens rea* element of the offenses. We affirm

## Background

While on patrol, Officer Armando Guerra of the Brenham Police Department noticed a red Dodge Durango with a missing front license plate and a covered rear license plate. Officer Guerra decided to make a traffic stop. As he accelerated to catch up with the Durango, which Appellant was driving, Officer Guerra witnessed Appellant speed and change lanes without signaling. Officer Guerra activated his emergency lights, and Appellant pulled over without any trouble.

Officer Guerra approached on the passenger side and "smelled fresh marijuana in the car." Appellant identified himself to Officer Guerra and admitted that he did not have a driver's license or insurance. Officer Guerra asked Appellant to step out of the Durango, and they talked while standing next to the patrol car. When asked, Appellant initially denied having marijuana but eventually admitted to there being a small amount in the Durango's center console. Officer Guerra decided to search the Durango and called for backup. Corporal Andrea Guerra arrived to assist.

---

[1] Appellant also appeals his evading-arrest conviction but does not challenge that conviction in his briefing. Accordingly, we affirm that conviction.

2

Appellant continued to stand near the patrol car while Officer Guerra searched the Durango and found the marijuana Appellant had disclosed. During the search, Officer Guerra learned from dispatch that the rear license plate did not match the Durango, leading him to believe it might be stolen. Officer Guerra arrested Appellant for possession.

Officer Guerra described Appellant as "polite" up to this point. But when Officer Guerra took Appellant into custody, Appellant gave "a little resistance." As Officer Guerra placed Appellant in the rear seat of the patrol car, Appellant kept his legs outside of the car and began to stall. After being told by Officer Guerra that the rear license plate did not match the Durango, Appellant managed to free one hand from the handcuffs and pushed past Officer Guerra and Corporal Guerra.

Appellant succeeded in getting by the officers and into the Durango's driver's seat. As described more fully below, Officer Guerra and Corporal Guerra struggled with Appellant as he tried to put the Durango into gear, which he eventually succeeded in doing. Officer Guerra and Corporal Guerra fell to the ground as the Durango moved and believed Appellant was trying to run them over. The defense claimed Appellant's movements in the Durango were to avoid a civilian bystander's

truck which the bystander had parked in front of the Durango to block Appellant's exit.[2]

As Appellant drove away, Officer Guerra rose to his knees, drew his sidearm, and fired twice in Appellant's direction but did not hit him. Both officers returned to their patrol cars and pursued Appellant for a few miles before losing sight of him. The pursuit was called off, but Appellant was later arrested after crashing the Durango.

Appellant was charged with evading arrest and multiple counts of aggravated assault against a public servant with a deadly weapon. A jury convicted him of evading arrest and two counts of aggravated assault based on threatening the officers with imminent bodily injury while using or exhibiting a deadly weapon. Appellant was sentenced to ten years' confinement for evading arrest and thirty years' confinement for each aggravated-assault count, all sentences to run concurrently. Appellant now appeals.

---

[2] The civilian testified that he was driving when he saw Appellant fighting with Officer Guerra. The civilian decided to stop and assist by blocking Appellant's Durango from the front.

**Sufficiency of Evidence**

In a single appellate issue, Appellant argues the evidence is insufficient to support the jury's finding that he intentionally or knowingly committed the assaults forming the basis of the aggravated-assault offenses.

**A.      Standard of review**

The State must prove each essential element of an offense beyond a reasonable doubt. *Baltimore v. State*, 689 S.W.3d 331, 340 (Tex. Crim. App. 2024); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). The sufficiency of the State's evidence "is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). We consider all the admitted evidence and view it in the light most favorable to the verdict. *Harrell v. State*, 620 S.W.3d 910, 913–14 (Tex. Crim. App. 2021); *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). We then determine whether the cumulative force of the evidence, together with any reasonable inferences from it, could lead a rational juror to find that the State has proven the essential elements of the crime beyond a reasonable doubt. *Baltimore*, 689 S.W.3d at 341; *see also Cary v. State*, 507 S.W.3d 761, 766 (Tex. Crim. App. 2016) (appellate court's role is not to act as additional

5

juror but to ensure jury's verdict is rational one based on more than "a mere modicum of evidence").

As the sole factfinder, the jury may believe some witnesses, disbelieve others, weigh the evidence, and reasonably infer facts therefrom. *See Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). In drawing inferences, juries may "use common sense and apply common knowledge, observation, and experience gained in ordinary affairs." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). But juries may not "come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Baltimore*, 689 S.W.3d at 342.

## B. Analysis

As charged in this case, a person commits the first-degree felony of aggravated assault on a public servant by threat when (1) he commits assault by "intentionally or knowingly threaten[ing] another with imminent bodily injury," (2) he "uses or exhibits a deadly weapon during the commission of the assault," and (3) the offense is committed "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty." *See* TEX. PEN. CODE §§ 22.01(a)(2), .02(a)(2), (b)(2)(B). A threat need not be verbal; a person may communicate a threat by action or conduct. *McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984).

6

Assault by threat of imminent bodily injury is a conduct-oriented offense, meaning the *mens rea* element focuses on the act of making a threat, regardless of any result the threat might cause. *See Ex parte Rion*, 662 S.W.3d 890, 900 n.12 (Tex. Crim. App. 2022); *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008); *see also Landrian*, 268 S.W.3d at 543 (Price, J., concurring) ("[T]here are the 'bodily injury' and 'physical contact' theories of simple assault, which are result-of-conduct theories of the offense, and then there is the 'threat-of-imminent-bodily injury' theory, which is a nature-of-conduct theory of the offense"). A person acts "intentionally, or with intent, with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct[.]" TEX. PENAL CODE § 6.03(a). A person acts "knowingly, or with knowledge, with respect to the nature of his conduct . . . when he is aware of the nature of his conduct[.]" *Id.* § 6.03(b).

Appellant argues that, although the evidence might support that he drove the Durango away from the scene to evade arrest, it does not support that he intentionally or knowingly threatened the officers with imminent bodily injury. We disagree.

Appellant began resisting as Officer Guerra placed him in handcuffs. Officer Guerra tried to put Appellant in the back of the patrol car, but Appellant refused and was able to slip out of one of the handcuffs. Appellant then fought past Officer Guerra and Corporal Guerra and got into the Durango's driver seat. Officer Guerra leaned half his body into the Durango's driver's door and wrestled with Appellant,

7

who was revving the engine. Corporal Guerra grabbed Appellant's arm and tried to pull him out of the vehicle and was also trying to tase him. Twice during the struggle, Appellant put the vehicle into drive, and Officer Guerra was able to slap the shifter back into park. But the third time, Officer Guerra felt the vehicle moving, so he pulled out of the door. Officer Guerra testified as follows about what happened next:

> So my body started to go with the motion of the vehicle and I kind of, like, rolled underneath the carriage -- the undercarriage of the vehicle, half of my body and I could see the -- I could see the rear wheel, like, I had the -- like, oh, man, he's about to run me over and then all of a sudden, the car goes in reverse and the door -- the edge of the door right here, it caught my vest so it kind of tucked me and pulled me back under the car and at that time I was -- okay, this guy's trying to run me over. I had the mentality, he's not just trying to get away; he's trying to -- he's trying to kill me.

When the Durango jerked, Corporal Guerra fell to the ground and was disoriented as to where she was and what was occurring. She heard engine noises and believed Officer Guerra had been run over and that she was next. Corporal Guerra crawled into traffic without being struck by a vehicle, turned around, and saw Officer Guerra standing and Appellant driving the Durango past the civilian's truck parked in front of him.

Although they were able to get away from the Durango, Officer Guerra and Corporal Guerra sustained some minor injuries. Photographs were admitted showing abrasions, scratches, and bruises to his chin, shoulders, arms, and legs, and

8

to her arms and legs. Officer Guerra had road rash to his leg and shoulder and a paint transfer from the Durango to his pants, and Corporal Andrea had road rash to her arms.

As Appellant recognizes in his briefing, conduct intending to evade an arrest and conduct intending to threaten a police officer with imminent bodily injury are not mutually exclusive. After struggling with the officers as he tried to put the Durango into gear, Appellant began moving the Durango while the officers were standing in or next to the driver's door. Both officers fell to the ground and sustained injuries, but Appellant continued maneuvering the Durango. The jury could infer Appellant saw Officer Guerra fall when the vehicle began moving, knew the door was still open, and knew that Officer Guerra was either beside or under the car. Likewise, the jury could infer appellant knew Corporal Guerra had fallen and was near the Durango. From these facts, the jury reasonably could find that Appellant acted knowingly because he was aware the nature of his conduct—maneuvering a vehicle in close proximity to where the officers had fallen to the ground—threatened the officers with imminent bodily injury. *See* TEX. PEN. CODE §§ 6.03(b), 22.01(a)(2); *see also Dominique v. State*, No. 01-09-00385-CR, 2010 WL 1571180, at *3–6 (Tex. App.—Houston [1st Dist.] Apr. 8, 2010, pet. ref'd) (mem. op.; not designated for publication) (rejecting appellant's argument the evidence supported

only that he was trying to escape officers in his vehicle, concluding the evidence also supported the *mens rea* element of aggravated assault by threat).

We overrule Appellant's sole issue.

## Conclusion

We affirm the trial court's judgment on the two counts of aggravated assault.


Andrew Johnson
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).